UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> LISA LOCKE aka <br> LISA DAVIS-LOCKE and LISA DAVIS <br><br> Defendant. | Criminal No. 09-259 (JDB) <br> Civil No. 12-1849 (JDB) |

# MEMORANDUM OPINION

This case is before the Court on petitioner Lisa Locke's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court will deny the motion.

## BACKGROUND

From January 2007 until April 2008, Locke participated in a conspiracy to possess stolen mail and to present forged checks to banks and check-cashing stores throughout the Washington, D.C. area. That conspiracy caused an actual loss of more than $120,000 but had an intended loss of more than $340,000. Subsequently, Locke was charged with conspiracy, see 18 U.S.C. § 371, nine counts of possession of stolen mail, see id. § 1708, three counts of possession of a forged security, see id. § 513(a), seven counts of bank fraud, see id. § 1344, and nineteen counts of aggravated identity theft, see id. § 1028A(a)(1).

In April 2010, Locke agreed to plead guilty to one count of possession of stolen mail and one count of aggravated identity theft; the government agreed to dismiss the remaining 37 counts of the indictment and not to seek a total sentence of more than 60 months' imprisonment. See Government's Opp'n Ex. B (Plea Offer, Apr. 16, 2010) 1, 4. The parties stipulated to the

appropriate offense level under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") for the possession of stolen mail charge; the aggravated identity theft charge carried a mandatory minimum sentence of 24 months to be served consecutively. See id. But the government reserved the right to seek a four-point increase of the offense level for the stolen mail charge on the ground that Locke was an "organizer or leader" of a conspiracy involving more than five participants. Id.; see U.S.S.G. § 3B1.1(a).

The government advocated for a 60-month sentence for Locke: the mandatory 24 months for aggravated identity theft plus a consecutive 36-month sentence for possession of stolen mail. Government's Mot. Ex. C (Omnibus Sentencing Mem.) 1, 6. Locke argued in her sentencing memoranda and during the sentencing hearing that several mitigating factors warranted a below-Guidelines sentence. One of those factors was her "desire to meet with prosecutors and report on the crimes of other[] co[-] conspirators." Government's Mot. Ex. D (Def.'s Mem. In Aid of Sentencing) 4. Another purportedly mitigating factor was that the intended loss calculation was almost three times the actual loss, and so a Guidelines range based on the intended loss, see U.S.S.G. § 2B1.1, overstated the severity of the crime. See id.

In response, the government explained that although Locke had agreed to provide information about her co-conspirators, she had refused to provide information about her son and her brother, both of whom had unrelated criminal cases pending in D.C. Superior Court. Sentencing Tr. 45 [Docket Entry 92] (Sept. 23, 2010) ("Sentencing Tr."). As a result, her efforts to cooperate were unsuccessful. In addition, the Court, in announcing her sentence, explained that much of the intended loss was attributable to "unsuccessful check[-] cashing efforts" by members of the conspiracy. Id. at 33. Thus, although the intended loss did exceed the actual loss, much of the intended loss was actually attributed to attempted criminal conduct, and so the

Guidelines range based on the intended loss did not significantly overstate the severity of the crime. Id. at 49.

Before sentencing, the Court held a hearing at which both parties presented evidence on the question whether Locke was a leader or organizer of the conspiracy. Hr'g Tr. [Docket Entry 74] (Sept. 8, 2010). At sentencing, the Court concluded that based on the evidence presented, the four-point increase applied. Sentencing Tr. 21. Based on Locke's adjusted offense level for the possession of stolen mail charge and her criminal history category of III, her Guidelines range was between 57 and 71 months, consecutive to the mandatory minimum sentence of 24 months on the charge of aggravated identity theft. Id. at 24-25.

The Court sentenced Locke to 60 months' incarceration: 36 months for possession of stolen mail and 24 months, consecutively, for aggravated identity theft. Id. at 51. This sentence was "well below" the Guidelines recommendation of 57 to 71 months for possession of stolen mail plus 24 months for aggravated identity theft. Id.

Locke appealed her sentence to the D.C. Circuit, arguing that the Court erred in "'fail[ing] to consider' her unrequited efforts to cooperate with the prosecution . . . , and her claim that basing her sentence in part on intended, not actual, loss, 'substantially overstates the seriousness of the offense.'" United States v. Locke, 664 F.3d 353, 355-56 (D.C. Cir. 2011). The D.C. Circuit specifically rejected both arguments. Id. at 357-58. In affirming the sentence, the court stated that "the record makes plain that the district court carefully considered and evaluated both arguments Locke claims it ignored . . . [and] the court provided a well-reasoned basis for its decision." Id.

Locke has now moved pro se to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255, which the government opposes.

## **STANDARD OF REVIEW**

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Such a motion will be granted only in limited circumstances because of the premium placed on the finality of judgments and because of the opportunities prisoners have to raise most of their objections during trial or on direct appeal. See United States v. Frady, 456 U.S. 152, 164 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum."). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." Id. at 166. The defendant bears the burden of proving his claims by a preponderance of the evidence. United States v. Simpson, 475 F.2d 934, 935 (D.C. Cir. 1973).

Even so, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. But a district court need not conduct an evidentiary hearing before denying a § 2255 motion when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." Id.; United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996). "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings

in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal . . . ." Rules Governing § 2255 Proceedings, Rule 4(b).

## DISCUSSION

In her motion to vacate, set aside, or correct her sentence, Locke raises a number of arguments. The Court has made its best effort to understand her arguments and to construe them favorably. Nonetheless, the Court finds that all lack merit or are procedurally barred.

**1)  Locke's argument regarding intended loss versus actual loss is procedurally barred**

Locke argues that the Court erred because the "intended loss far exceeds the actual loss, which caused her to receive a higher sentence which results in a miscarriage of justice." Def.'s Mot. 8; Def.'s Reply 8. Locke raised this precise issue on direct appeal, arguing that the Court erred in "'fail[ing] to consider' . . . her claim that basing her sentence in part on intended, not actual, loss, 'substantially overstates the seriousness of the offense.'" Locke, 664 F.3d at 355-56; Def.'s Mot. 2 (Under "Grounds raised" on appeal, petitioner wrote that the Court erred in that "the intended loss in the case far exceeded the actual loss."). The D.C. Circuit specifically rejected this argument. Locke, 664 F.3d at 357-58.

A federal prisoner cannot raise collaterally any issue litigated and adjudicated on direct review, absent exceptional circumstances not present here. Davis v. United States, 417 U.S. 333, 342 (1974) (holding that upon intervening change in law, defendant may collaterally relitigate decided issue); United States v. Greene, 834 F.2d 1067, 1070-71 (D.C. Cir. 1987). Hence, claims already raised and rejected on direct review normally will not be entertained on a section 2255 motion. Reed v. Farley, 512 U.S. 339, 358 (1994) (Scalia, J., concurring); Garris v. Lindsay, 794 F.2d 722, 726-27 (D.C. Cir. 1986).

5

Here, there has been no intervening change in law or newly discovered evidence that would permit Locke to relitigate this issue. See Greene, 834 F.2d at 1070. Thus, because "direct appeal is the primary avenue for review of a conviction or sentence," and "mere lack of success on that appeal does not pave the way for collateral attack," the Court will not entertain this claim. Garris, 794 F.2d at 727 (quoting Barefoot v. Estelle, 463 U.S. 880, 887 (1983) (internal quotation marks omitted)). The exceptional circumstances under which a federal prisoner may raise collaterally an issue litigated and adjudicated on direct review are not present here; as a result, Locke's claim is procedurally barred.

### 2) Locke's counsel was not constitutionally ineffective

Locke also argues that her counsel was constitutionally ineffective. The Sixth Amendment guarantees "the right to the effective assistance of counsel," Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks omitted), and a habeas petitioner may raise an ineffective assistance of counsel claim for the first time in a section 2255 proceeding "whether or not [she] could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003). To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must show both that her lawyer performed deficiently, see Strickland, 466 U.S. at 687 (requiring showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"), and that she was prejudiced by the lawyer's mistakes, see id. at 694 (requiring "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700. In assessing counsel's performance, the Court must "indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance." United States v. Toms, 396 F.3d 427, 432 (D.C. Cir. 2005) (internal quotation marks omitted).

In support of her ineffective assistance claim, Locke contends that her attorney coerced her guilty plea. She alleges that "[c]ounsel coerced and coached [her] on what to say at [the] pre-trial hearing," Def.'s Mot. 5, that counsel told her that "she had no choice but to accept the plea," Def.'s Reply 8, and that there was "writing on the defense counsel's copy of the plea agreement as to what Petitioner had to say to not be more [severely] punished," Def.'s Reply 9. The Court, however, conducted a thorough colloquy with Locke to ascertain that she was knowingly and voluntarily pleading guilty. See Plea Tr. 4-13 [Docket Entry 89] (Apr. 29, 2010) ("Plea Tr.") (Robertson, J.). Those representations—coupled with the Court's findings in accepting the plea—"'constitute a formidable barrier in any subsequent collateral proceeding.'" United States v. Farley, 72 F.3d 158, 163 (D.C. Cir. 1995) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)). And to establish prejudice under Strickland, Locke must establish a reasonable probability that in the absence of the alleged coercion, she would have chosen to go to trial rather than plead guilty. United States v. Berkeley, 567 F.3d 703, 710 (D.C. Cir. 2009). If Locke misunderstood that she had no choice but to plead guilty, that misunderstanding "should have evaporated during the [R]ule 11 colloquy." Farley, 72 F.3d at 165. Locke expressly acknowledged that she understood her right to a jury trial and that she waived that right by pleading guilty. Plea Tr. 8-9. Alleged advice to the effect that Locke "had no choice" but to plead guilty thus "'amounted to no more than . . . unvarnished advice' . . . indicative of effective, rather than ineffective, assistance of counsel," given the strength of the evidence against her. United States v. Tolson, 372 F. Supp. 2d 1, 21-22 (D.D.C. 2005). In any event, Locke has failed to allege, "much less establish," a reasonable probability that in the absence of the alleged coercion,

she would have chosen to go to trial on the thirty-nine counts against her. Berkeley, 567 F.3d at 710.

Locke further argues that her lawyer was deficient in "failing to conduct appropriate factual and legal inquiries . . . [and in] failing to pursue overlooked mistakes in the computation of the offense level . . . and mathematical error relating to petitioner's relevant conduct." Def.'s Mot. 5. But Locke has not identified any specific failing—she has not, for instance, pointed to any mistakes in the computation of the offense level or to any particular mathematical error. And she has not indicated what inquiries counsel should have made, or what such inquiries might have uncovered. See Toms, 396 F.3d at 433 (rejecting ineffective assistance claim where petitioner offered insufficient indication of "what his counsel might have done"). The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id., and Locke's vague and conclusory allegations about unidentified mistakes do not rebut that presumption.

Moreover, all indications are that Locke's counsel negotiated a favorable plea agreement here. Locke was charged with thirty-nine different counts and ended up pleading guilty to only two of those counts. She has not identified into which, if any, of those counts counsel should have conducted further inquiries, and she has not clarified how counsel might have gotten her an even better deal as a result. United States v. Askew, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (to make out inadequate investigation claim, defendant must make "comprehensive showing as to what the investigation would have produced" and that it would have produced a different result). In light of the strength of the government's evidence against Locke on those thirty-nine counts, see Government's Opp'n Ex. E (Statement of the Offense) (Apr. 28, 2010) ("Statement of Offense"), and her conclusory allegations of what her counsel "might have done," she has not

shown that counsel's conduct falls outside of the "wide range" of reasonable professional assistance, Toms, 396 F.3d at 433.

### 3) Locke's argument that her plea was coerced because it was "wired" is procedurally barred

Locke next attempts to raise an issue that she did not raise on direct review. Specifically, Locke alleges that the government coerced her guilty plea by conditioning acceptance of her plea on the simultaneous entrance of guilty pleas by her codefendants; this arrangement is commonly known as a "wired plea." Def.'s Reply 4, 13. But "a collateral challenge may not do service for an appeal." Frady, 456 U.S. at 165. In general, a defendant may not raise a claim on collateral review that she did not raise on direct review unless she can show "either cause and actual prejudice, or that she is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (citations and internal quotation marks omitted). Locke does not contend that she is actually innocent, and so she must show cause and actual prejudice to raise this issue now. United States v. Spadaro, 675 F. Supp. 2d 36, 38 (D.D.C. 2009).

"[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (internal quotation marks omitted). Even construing Locke's allegations broadly, she has asserted only one possible cause for her failure to raise this issue on appeal: ineffective assistance of her appellate counsel.[1] Constitutionally ineffective assistance of counsel constitutes cause in this context. McCleskey, 499 U.S. at 494. In aid of this claim, Locke argues that her appellate counsel "discussed nothing with [her]" and that "[t]here was absolutely no communication between [her and her appellate counsel]." Def.'s Reply 2. Whether or not this

---

[1] Although Locke raises this "cause" argument in the context of an explanation for her failure to raise her ineffective assistance of counsel argument on direct review, rather than in the context of her wired plea argument, pro se filings are to be "liberally construed." See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

alleged failure to communicate, and nothing more, rises to the level of ineffective assistance of counsel under Strickland, Locke cannot demonstrate that this alleged error resulted in "actual prejudice." Frady, 456 U.S. at 168.

To show that an error resulted in "actual prejudice," a defendant must show "not merely that the errors [alleged] created a possibility of prejudice, but that they worked to [her] actual and substantial disadvantage." Id. at 170. In the specific context of alleged errors during plea proceedings, Locke must show that "the plea proceeding was tainted by 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" Farley, 72 F.3d at 162 (quoting Hill v. United States, 368 U.S. 424, 428 (1962). Locke's claim, generously construed, is that she suffered actual prejudice when the Court accepted her plea because it was "wired" and thus not knowingly and voluntarily made. See Def.'s Reply 4, 13. And relevant here, Rule 11(d) requires the district court to determine that a guilty plea is "voluntary and not the result of force or threats or of promises apart from a plea agreement." But the Court expressly asked Locke whether anyone had "pressured or forced or coerced" her to accept her guilty plea, Plea Tr. 12, and Locke responded in the negative. The Court also asked her whether she was "entering into [the] plea agreement voluntarily and of [her] own free will," to which she responded in the affirmative. Id. In other words, Locke acknowledged that her plea was knowingly and voluntarily entered, Farley, 72 F.3d at 163 (citing United States v. Clements, 992 F.2d 417, 418-20 (2d Cir. 1993)), and those representations—coupled with the judge's findings in accepting the plea—"'constitute a formidable barrier in any subsequent collateral proceeding,'" Farley (quoting Blackledge, 431 U.S. at 73-74). Further, the D.C. Circuit has expressly held that when dealing with a wired plea, a district court need not make a more careful voluntariness inquiry than usual. Farley, 72 F.3d at

164. Thus, because the sentencing court fulfilled its duty under Rule 11(d), the Court concludes that Locke did not suffer actual prejudice simply because the plea was wired.

Accordingly, even assuming—without deciding—that Locke's counsel on direct appeal was constitutionally ineffective, because Locke has not shown actual prejudice resulting from her wired plea, she is procedurally barred from raising the issue here. Frady, 456 U.S. at 167 (finding it unnecessary to consider cause because no actual prejudice shown).

> 4) **Locke's argument that the government should have moved to reduce her sentence based on her willingness to cooperate is without merit**

Locke also attempts to recast her previously raised argument regarding her failed attempt at cooperation as a failure on the government's part. Specifically, she argues that: the "[g]overnment failed to adhere to its Plea Agreement promise as it relates to petitioner's case and not unrelated case [sic]"; "[n]o sentence reduction motion was offered on Petitioner's behalf at sentencing [under U.S.S.G. § 5K1.1] or after sentencing, based on [Fed.R.Crim.P.] Rule 35(b); and the "[g]overnment should have [been] held to the standards to comply [with] their [commitment] to move for sentence reduction, because of [her willingness] to provide information on others [involved] directly in the present case." Def.'s Mot. 6.

But Locke raised a very similar argument on direct appeal: she argued that the Court erred when it "failed to consider Appellant's request for a lower sentence based on her attempt to cooperate with [the] government." Mot. at 2; Locke, 664 F.3d at 355-56. And just as it had rejected her argument regarding intended versus actual loss, the D.C. Circuit specifically rejected this argument. Locke, 664 F.3d at 357-58. Hence, this argument appears to be procedurally barred as well. Reed, 512 U.S. at 358.

True, Locke's current argument on collateral review is not identical to the argument previously raised. She argues that she is entitled to relief based on the government's error in not

11

moving to reduce her sentence based on her failed cooperation attempt. Def.'s Reply 13 ("Petitioner could have been offered a Downward Departure Variance, a 5K1.1 for her assistance in her case"). Yet this argument, too, must fail: the government did not make any promise or otherwise commit in Locke's plea agreement to move for a sentencing reduction. See generally Government's Opp'n Ex. B (Plea Offer) (Apr. 29, 2010). That decision was left to the government's discretion, to be exercised through an identified process.

Locke also cites Federal Criminal Rule 35(b) to support her argument. That Rule provides that the government may move to reduce a defendant's sentence, and the court may so reduce, "if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Id. Even assuming that Locke provided substantial post-sentencing cooperation—though she has not identified any such cooperation—by its own terms Rule 35(b) is permissive, not mandatory. The government is not required to move to reduce, and the court "may" reduce the defendant's sentence upon such a motion. Id. Thus, her claim that the government somehow violated her plea agreement or Rule 35(b) by not moving to reduce her sentence is without merit.

### 5) Locke's claim for vindictive prosecution is also without merit

Based on the allegations in her Reply, Locke also asserts a claim for vindictive prosecution. Def.'s Reply 3, 4 (asserting that the government "vindictively enhanced her points to a much higher sentence," and "[induced] her to plead guilty to identity theft"). A prosecutorial act is vindictive "only if designed to penalize a defendant for invoking legally protected rights." United States v. Meyer, 810 F.2d 1242, 1245 (D.C. Cir. 1987). A defendant can establish a presumption of vindictiveness by showing that the prosecutor's decision was "more likely than not" attributable to vindictiveness. Alabama v. Smith, 490 U.S. 794, 802

(1989); United States v. Gary, 291 F.3d 30, 34 (D.C. Cir. 2002). But the presumption does not apply where the prosecutor's conduct is attributable to legitimate reasons. United States v. Jones, 786 F. Supp. 2d 378, 381-82 (D.D.C. 2011) (citing United States v. Goodwin, 457 U.S. 368, 374 (1982)).

Locke seems to argue that the government retaliated against her for refusing to cooperate against her brother and her son by (1) seeking the four-point "organizer or leader" enhancement and (2) somehow inducing her to plead guilty to aggravated identity theft. Def.'s Reply 3, 4. As the Court recognized at Locke's sentencing, though, the government had legitimate reasons for seeking the four-point enhancement: after conducting a separate hearing at which both parties presented evidence on the issue, the Court found that she should receive the enhancement. Sentencing Tr. 21. Setting aside that Locke makes only bare allegations that her aggravated identity theft plea was coerced—and setting aside that the Rule 11 colloquy cured any prejudice that might have resulted, see supra Part 3—that plea was supported by ample evidence, to which Locke agreed. See generally Statement of Offense. Hence, because the government had legitimate reasons for seeking the four-point enhancement and the aggravated identity theft plea, Locke cannot establish vindictive prosecution.

### 6) The new constitutional rule announced in Peugh v. United States does not apply retroactively to Locke's case on collateral review

Finally, Locke argues that because her offense conduct occurred in 2008 but she was sentenced under the 2009 Guidelines, she is entitled to relief under Peugh v. United States, 133 S.Ct. 2072 (2012), recently decided by the Supreme Court. See Docket Entry 130 ("Document filed in regard to 'Ex Post Facto Clause Claim'") (July 3, 2013). Peugh announced a new rule of constitutional law: the Ex Post Facto Clause of the Constitution prohibits federal courts from sentencing a defendant based on guidelines promulgated after she committed her crimes if the

13

new version of the guidelines provides a higher sentencing range than the version in effect when the offense was committed. Id.; see Hawkins v. United States, No. 11-1245, 2013 WL 3942324 at *2 (7th Cir. July 31, 2013) (analyzing whether Peugh applies retroactively on collateral review); United States v. Osborn, No. 13 C 50224, 2013 WL 3795700 at *1 (N.D. Ill. July 19, 2013) (same). Even assuming that the guidelines under which Locke was sentenced provide for a higher sentencing range than those in effect when she committed her offense, Peugh cannot help Locke. Peugh's new constitutional rule is only applicable to her case if the Supreme Court has made the rule retroactive to cases on collateral review. See Dodd v. United States, 545 U.S. 353 (2005); Hawkins, 2013 WL 3942324 at *2. But the Supreme Court did not announce in Peugh that its new rule so applies, and it is unlikely that it will do so. Broadly speaking, only new substantive rules—as opposed to new procedural rules—apply retroactively to cases on collateral review, and Peugh itself notes that "failing to calculate the correct Guidelines range constitutes procedural error." 133 S.Ct. at 2083; see Hawkins, 2013 WL 3942324 at *2 (expressing view that Peugh probably not applicable retroactively to cases on collateral review); Osborn, 2013 WL 3795700 at *1 (same). Consequently, Locke is not entitled to relief under Peugh.

## CONCLUSION

Upon a careful review of the petitioner's motion and the entire record of this criminal proceeding, the Court concludes that a hearing is unnecessary. See Morrison, 98 F.3d at 625 (where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the judge need not conduct an evidentiary hearing (quoting § 2255) (internal quotation marks omitted)). The relevant filings here conclusively show that Locke is entitled to no relief, and she does not point to any information outside the record that would

14

assist the Court in evaluating her claims. Toms, 396 F.3d at 437. Accordingly, the Court will deny the motion without holding an evidentiary hearing.

For all these reasons, the Court will deny Locke's section 2255 motion. A separate order has been issued.

/s/
JOHN D. BATES
United States District Judge

Dated: September 6, 2013